# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs January 25, 2005

## STATE OF TENNESSEE v. RICHARD P. HOLT

**Direct Appeal from the Circuit Court for Warren County**
**Nos. F-8713, F-8674, F-8681, F-8583     Larry B. Stanley, Judge**

_____

**No. M2004-00733-CCA-R3-CD - Filed February 22, 2005**

_____

The Defendant, Richard P. Holt, pled guilty to various drug related felonies in four separate cases, and he was placed on community corrections, and then transferred to supervised probation for a period of eight years. Subsequently, a probation violation warrant was issued because the Defendant left the state without permission, and the Defendant was indicted and arrested for theft of property valued over $500.00. After a hearing, the trial court revoked the Defendant's probation and ordered the Defendant to serve the remainder of his sentences in prison. The Defendant now appeals, contending that: (1) the evidence is insufficient to revoke the Defendant's probation; and (2) the trial court erred in ordering the Defendant to serve the remainder of his sentence in prison. Finding no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES, and JERRY L. SMITH, JJ., joined.

Keith S. Smartt, McMinnville, Tennessee, for the appellant, Richard P. Holt.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Dale Potter, District Attorney General; and Larry Bryant, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

On November 9, 2001, the Defendant entered guilty pleas in four separate indictments, resulting in eight felony drug convictions, and an effective probated sentence of eight years. On September 8, 2003, the Defendant's probation officer swore out a probation violation warrant for the Defendant, alleging that the Defendant left the state without permission, and that the Defendant was arrested and indicted for theft of property over $500.00.

The following evidence was presented at the Defendant's probation revocation hearing: Wanda Evans testified that the Defendant was placed on probation on December 10, 2001, for a period of eight years, and that Officer Lynn Bourgeois was the Defendant's probation officer from that date until February 2, 2004.[1] Evans testified that Bourgeois filed a violation of probation warrant against the Defendant based on an indictment and arrest in Maury County and because the Defendant left the state without prior permission from his probation officer. Evans said that the Defendant's probation records indicated that, on August 15, 2003, the Defendant reported to his probation officer that he went to Florida and that he was aware that he was prohibited from leaving the state of Tennessee without prior permission from his probation officer. On cross-examination, Evans admitted that the Defendant has complied with all requirements of his probation, before and after she took over for Bourgeois, except for the two instances upon which the probation violation warrant was issued.

Katie Bryant testified that she is a pharmacy clerk at Stewart's Pharmacy. She said that, when a person comes to fill a prescription at her pharmacy, the pharmacy employee calls out the last name on prescriptions when they are ready, and the customers go to the counter and ask for their prescriptions by name. She recalled that, on February 3, 2003, the Defendant came to the pharmacy counter and asked for a prescription for "Russell," but she did not remember if the Defendant said a first name. She said that the prescription bag contained several different prescriptions. She testified that the person who picks up a prescription must sign a pharmacy log that also lists the prescription number, and when the Defendant picked up the "Russell" prescription, he signed "Bill Jones." On cross-examination, Bryant admitted that sometimes prescriptions are picked up by family members or friends of the patient. She said that the pharmacy does not require identification to pick up a prescription. She did not remember whether the Defendant claimed to be a family member or a friend of the Russells. She recalled that the Defendant used to fill his own prescriptions at Stewart's pharmacy, but she had not reviewed the records to see how often he did so. She admitted that she did not review the pharmacy records to see if there was a prescription for "Trussell" the day the Defendant picked up the "Russell" prescription.

Nathan Hale testified that he is a pharmacy technician and clerk at Stewart's Pharmacy. He recalled that, on February 3, 2003, the Defendant came into the pharmacy to fill a prescription for himself. He said that the Defendant picked up this prescription, for six medications, and he signed the name "Richard Holt." Hale recalled that, after picking up his own prescriptions, the Defendant returned to the counter and spoke with Katie Evans, but he could not hear what the Defendant said to Evans. Hale testified that, according to pharmacy records, there was a prescription filled for "Mr. or Mrs. Trussell" the day before the Defendant came to the store, but he had no records indicating whether this prescription had been picked up or was still at the pharmacy when the Defendant picked up the "Russell" prescription. On cross-examination, Hale admitted that a patient's family members and friends sometimes pick up a

---

[1] Evans became the Defendant's probation officer February 2, 2004, when she took over Officer Bourgeois' cases.

2

prescription, and the pharmacy does not require identification. He said that the pharmacy looked for, but could not locate, any records to indicate that the "Trussell" prescription was picked up. Hale said that patients had mistakenly picked up other people's prescriptions before, but these patients usually returned the incorrect prescription to the pharmacy to remedy the mistake. Hale reiterated that the Defendant signed "Bill Jones" when he picked up the "Russell" prescription. Hale testified that he did not actually witness the Defendant give a prescription to Evans or physically take a prescription bag from the counter.

James Trussell testified that, on February 3, 2003, he asked the Defendant to pick up a prescription that he had filled at Stewart's Pharmacy. He said that he did not know which medication the prescription was for, because he is taking six or seven different medications. On cross-examination, Trussell testified that the Defendant returned with his own prescription, but did not have Trussell's prescription. Further, he said that he asked the Defendant where his prescription was, and the Defendant said he did not pick it up. The Defendant did not tell Trussell that he picked up someone else's prescription by mistake.

The Defendant testified that he is disabled and takes a lot of medication due to a car accident in which he suffered brain damage and lost part of his arm. He said he has had prescriptions filled at Stewart's Pharmacy at least once a month since the year 2000. The Defendant said that, on February 3, 2003, he went in to pick up his own prescription and Trussell's prescription. He said that he had had surgery "that day or a couple of days before," but could not remember because he was on pain medications. He said that he forgot to get Trussell's prescription, so he went back inside to the pharmacy. He said that he asked for Trussell's prescription, the pharmacist handed him a bag, and he left. He testified that, after he was driving home, he realized that he had the wrong prescription, and "threw it out the window," because he was scared. He said that he did not intend to pick up the wrong prescription. The Defendant could not explain why he signed "Bill Jones" when he picked up the prescription, and he stated, "I assumed I signed [my name] . . . . Like I said, I was on drugs." The Defendant admitted that he left the state of Tennessee without permission from his probation officer.

On cross-examination, the Defendant said that his only felony convictions were the seven or eight convictions for which he was on probation. He did not know whether he had ever been diagnosed with a dual personality, but stated that he "might draw a check for something like that." He denied having any alter ego named "Bill Jones." He admitted that he drove himself to the pharmacy on the day in question, despite being under the influence of pain medications.

After hearing the evidence, the trial court stated:

> [Defendant], [I]t is clear that you have violated your probation. I don't know whether you just don't have any sense or you are cocky or what. I mean, what you did was dumb. Number one, you are going to get caught. Number two, you testified that you went to Florida. You know that you weren't supposed to go. You violated your probation. You are looking at eight (8) years in the penitentiary. I don't know what that says. Like I said, you are either [a] brave or stupid one. It is one of the two. It is clear that you violated your probation in two

3

different ways. I don't believe anything you just said about those prescriptions. I think you intended to get them. Of course, you violated your probation by going to Florida. You were given an opportunity. You were charged with serious offenses. Sale of mari[j]uana. Sale of Schedule 2 substance. Possession with the intent to sell Schedule 2, and Schedule 3, and Schedule 6. You were given an opportunity, and you chose not to abide by the rules. Therefore, your probation is revoked in Cases F-8713, F-8674, F-8618, and F-8513. You will serve the balance of your sentences in each one of those cases.

The Defendant appeals the trial court's order, contending that: (1) the evidence is insufficient to revoke the Defendant's probation; and (2) the trial court erred in ordering the Defendant to serve the remainder of his sentence in prison.

## II. Analysis

The Defendant argues that the trial court abused its discretion in revoking his probation because insufficient evidence was presented that he violated his probation. Specifically, the Defendant argues that the probable cause standard of proof for an indictment and arrest is lower than the preponderance of the evidence standard of proof for probation revocation, and, therefore, the trial court abused its discretion in basing the probation revocation on the Defendant's arrest. The State counters that the evidence presented was sufficient.

When a trial court determines by a preponderance of the evidence that a probationer has violated the conditions of his or her probation, the trial court has the authority to revoke probation. Tenn. Code Ann. § 40-35-311(e) (2003). The decision to revoke probation is in the sound discretion of the trial judge. State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). The judgment of the trial court to revoke probation will be upheld on appeal unless there has been an abuse of discretion. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). To find an abuse of discretion in a probation revocation case, the record must be void of any substantial evidence that would support the trial court's decision that a violation of the conditions of probation occurred. Id.; State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). Proof of a probation violation is sufficient if it allows the trial court to make a conscientious and intelligent judgment. State v. Milton, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984).

We conclude that sufficient evidence was presented that the Defendant violated his probation. The Defendant admitted that he violated his probation when he left the state without his probation officer's permission. This alone would be sufficient evidence upon which to revoke the Defendant's probation. In addition, however, evidence was presented that the Defendant was arrested and indicted for theft of property over $500.00. There was evidence that the Defendant went to Stewart's Pharmacy and picked up a prescription that did not belong to him. The Defendant signed the name "Bill Jones," and he made no effort to remedy his alleged "mistake." The trial court specifically stated that he did not believe the Defendant's claim that the Defendant made a mistake. The evidence does not preponderate against the trial court's

findings. Thus, we conclude that the trial court did not abuse its discretion by revoking the Defendant's probation.

Next, the Defendant contends that the trial court erred in ordering the Defendant to serve the remainder of his sentence in prison, rather than in some form of alternative to incarceration. Once the trial court makes a finding that a defendant has violated his or her probation, it is vested with the statutory authority to "revoke the probation and suspension of sentence and cause the defendant to commence the execution of the judgment as originally entered . . . ." Tenn. Code Ann. § 40-35-311(e). When probation is revoked, "the original judgment so rendered by the trial judge shall be in full force and effect from the date of the revocation of such suspension . . . ." Tenn. Code Ann.§ 40-35-310. In State v. Timothy A. Johnson, this Court explained that the trial court has discretion to order a defendant to serve the remainder of his sentence in prison. State v. Timothy A. Johnson, No. M2001-01362-CCA-R3-CD, 2002 WL 242351 *2 (Tenn. Crim. App., at Nashville, Feb. 11, 2002) *no perm. app. filed*. In Johnson, this Court stated, "A defendant who is already on probation is not entitled to another grant of probation or another form of alternative punishment." Id. Likewise, the Defendant here is not entitled to another grant of probation. Although he pleads for leniency, arguing that he served two years of his probation without incident, his probation was for a period of eight years, and he violated his probation. This issue is without merit.

### III. Conclusion

Based on the foregoing reasoning and authority, we affirm the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE